ANDREWS, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL. RAILWAY COMPANY, Appellant.

*May 6 — May 21, 1897.*

*Railroads: Injury to employee coupling cars: Special verdict: Proximate cause: Custom: Construction of statute: Improper remarks. of counsel: How error may be cured.*

1. In an action against a railroad company for personal injuries sustained by an employee, a special verdict finding that the injuries were occasioned " by reason of, and as the direct consequence of," the neglect complained of, but not finding that the injury was also the *probable* consequence of such negligence, or that a person of ordinary intelligence, under the circumstances, ought reasonably to have anticipated that injury to the plaintiff would probably result therefrom, is insufficient to establish that such negligence was the *proximate cause* of the injury.

2. In an action by a helper on a switching crew to recover for injuries,. received while attempting to couple a car which had been kicked down a side track upon a down grade, and alleged to have been caused by the negligence of the foreman in kicking a second car down the same track without warning so that it struck the first car before the coupling had been completed, plaintiff's evidence was to the effect that his first attempt to couple the cars had been unsuccessful, and that as the car returned after rebounding he made a second attempt without coming out from between the cars; but the evidence whether it was customary so to do was in dispute. *Held,* that a refusal to submit for special verdict the question of the existence of such custom was a material error.

Andrews vs. Chicago, Milwaukee & St. Paul R. Co.

3. Ch. 220, Laws of 1893 (regulating the liability of railroad companies for injuries received by employees in the course of their employment), was not designed to make the company an insurer against injuries naturally and usually incident to employment as railway operatives, by excluding all question as to assumption of such risks; nor did the limitation of liability to injuries received "without contributory negligence" on the employee's part require contributory negligence to be pleaded as a defense or shift the burden of proof in that regard.

4. Impropriety in the argument of counsel to the jury will not be cured by the mere formal announcement that objection thereto is sustained, but to have that effect the court must at once, and plainly, direct the jury to disregard the objectionable remarks.

APPEAL from a judgment of the circuit court for Iowa county: GEO. CLEMENTSON, Circuit Judge. *Reversed.*

This action was brought under ch. 220, Laws of 1893, by the plaintiff, an employee of the defendant as a helper in the day switching crew of the defendant company, in its yard at Madison, Wisconsin, to recover damages for an injury sustained by him, while in the line of his duty, in consequence of the alleged negligence of the foreman of said crew, one Roach, by reason of which the plaintiff's left hand was crushed, and it became necessary to amputate his arm above the wrist. The complaint charged, as the cause of his injury, negligence on the part of the plaintiff's fellow-servants or co-employees, and in particular of Roach, the foreman of the day switching crew, in the yard in which the plaintiff was engaged, for failing to follow the rules and custom governing switching therein, and that such negligence was the proximate cause of the plaintiff's injury, and asserted that the plaintiff was free from contributory negligence.

It was found by the special verdict, among other things: (1) That at the time of the injury, and for a number of years prior thereto, it was the practice and custom, in making up trains in the yard, for the helper, when a car was kicked

back to be connected with other cars, to catch the car so kicked back and ride it down to the other cars, and to make the coupling then and there, if he could. (2) That at the time of the plaintiff's injury, and prior thereto, it was the practice and custom, in the yard, for the foreman of the switching crew, after kicking back a car to be so coupled, not to kick back another car upon the same track until the helper who had gone with the first car had come out from between the cars, so that the foreman could see that he was in a position to catch the next car. (3 and 4) That the plaintiff and Roach, the foreman, at the time knew of the custom in these respects. (5) That the plaintiff, after he had ridden the refrigerator car down to near the stock car, alighted and went between these cars to couple them. (6) That while between said cars a car was kicked down the main track and struck the refrigerator car, driving it and the stock car together. (7, 8, and 9) That at this time the plaintiff was trying to make the coupling, and his left hand, by reason of the cars being so driven together, was caught between the drawheads and crushed, the plaintiff being in the line of his duty, and exercising ordinary care under all the circumstances. (10, 11, and 12) That Roach, the foreman, caused the car which struck against the refrigerator car to be kicked down the main track, and knew at the time that the plaintiff had gone down that track with the refrigerator car to couple it to the stock car; that, in causing the car which struck the refrigerator car to be kicked back at the time he did, he was guilty of negligence. (13) That the plaintiff's hand was crushed while he was between the stock car and the refrigerator car, *by reason of, and as the direct consequence* of, the negligence of Roach. The plaintiff's damages, if entitled to recover, were fixed at $6,000.

The defendant had asked that the following questions be severally submitted to the jury as a part of the special verdict, but they were each rejected, namely: (5) Ought a man

of ordinary intelligence and prudence, engaged in the business then followed by said Roach, to have reasonably expected, under the attending circumstances, that such violation of said custom at the time and place in question would result in a bodily injury of some kind to the plaintiff? (7) At the time the plaintiff was injured, had it, for a great many years, been the uniform custom of all helpers in switching crews in defendant's yard at Madison, who have gone between cars to couple them, to come out again immediately if they failed to make the coupling the first time, and look for coming cars?

After verdict, the defendant moved, upon the minutes, to set aside the verdict and for a new trial, upon its exceptions, and because the verdict was contrary to the law and the evidence, because the damages were excessive, and because the verdict did not cover all the issues. This motion was denied, and, upon plaintiff's motion, judgment was given on the verdict for the plaintiff.

The principal questions for consideration on this appeal are: First, whether the special verdict contains a sufficient finding that the negligence found by the jury was the proximate cause of the plaintiff's injury; second, whether the court erred in refusing to submit to the jury questions Nos. 5 and 7 proposed by the defendant. No instructions were given by the court to the jury upon the question whether the negligence of the defendant was the proximate cause of the plaintiff's injury.

It appeared in evidence that there were several side tracks north of the main track in the Madison yard, designated by numbers, and they have a slight descending grade towards the east. The train in question was a way freight from the west, consisting of twenty-two or twenty-three cars, and drew in from the main track on the side tracks 8 and 7. Plaintiff was a helper in defendant's day switching crew at Madison, which consisted of the foreman, Roach, and him-

Andrews vs. Chicago, Milwaukee & St. Paul R. Co.

self and Charles Mahaney as helpers. After setting out the caboose, the train was pulled west, until about half of it was on the main track, when it was separated in the middle, so that the westerly car of the east half stood over on the main track something like four feet. That was a stock car, and the brake on it was set. The west half of the train was then pulled west beyond switch 10, and a refrigerator car thrown down the main line. After it passed No. 10 switch, the plaintiff threw that switch back on side track 10, and ran and caught the refrigerator car, and rode it down, setting the brake on the east end of it; and, when it was about six or seven feet from the stock car mentioned, he alighted from it, and went to the stock car, standing there, facing east, with his left hand grasping the slats of the stock car; and, as the refrigerator car came up, he seized the link in its drawbar with his right hand, and entered it into the drawbar of the stock car, but failed to make the coupling, because, as he testified, of the difference in the height of the drawbars, of one to two inches. The refrigerator car recoiled back twelve to nineteen inches, and commenced returning slowly again; and while it was moving, and within that distance of the stock car, and the space was not over five or six inches between the end of the link and the stock-car drawbar, he attempted to change the link from the refrigerator car to the stock-car drawbar by reaching back and grasping the link with his left hand and the pin with his right, when another car, sent down on the main track, struck the refrigerator car all of a sudden, and it caught his hand. He testified that he had just got the link out of the refrigerator car when the car struck and his hand was caught. Evidence was given tending to show that it was dangerous to attempt to change a link within the short space and under the circumstances stated; that it was likely to result in the helper's hand being caught. It appeared from the evidence that the plaintiff had worked for about twenty years in the railway

service, and for about three years in the Madison yard. On the part of the plaintiff, the evidence of four witnesses was given, in substance: That the duties of the foreman were to get the switching list and proceed to switch the train, and to see that there were brakes on all cars before they were cut off, and that there was a man in position to catch the cars before he cut them off, and to see if there was a man in between the cars making a coupling, and to hold the cars until he saw that man out safe before sending down another car. The foreman cuts off the cars by pulling the pin. The helper throws the switches under the foreman's directions, and rides cars and couples them, and does the general work around the yard. When a car is kicked down, a helper gets onto it and rides it down, slacks it up before it strikes another car, and then gets down and makes the coupling, if he can; that is done by entering the link into the drawbar and setting the pin, and in two or three seconds. If he misses the coupling and the car stops still, then he is to set the pin and link so they will couple themselves when the cars are moved again. If the car moves back after it strikes, and then starts to move down grade again, as in this yard, the helper is supposed to stay in there and make the coupling; and, while in there for that purpose, it is the foreman's duty not to kick a car down on the same track unless he has a man to ride it down, when it is the duty of the man riding it down to stop the car before it strikes, when he sees that a man has gone in there and that he has not come out. Such was the custom at that time, and had been for several years.

The plaintiff testified that, when the refrigerator car was cut off, he caught it and rode it down; and he described his proceedings substantially as already stated, and said that there was a link in the refrigerator car as it came down, and none in the stock car; that he had hold of the link and steered it into the drawbar of the stock car,— got the link in; that he seized the pin, tried to get the pin down through

Andrews vs. Chicago, Milwaukee & St. Paul R. Co.

it, but could not, and the refrigerator car bounded back about eighteen or nineteen inches; that, when he held the link there between those two drawbars, there was a distance in addition to the length of the link, of five or six inches between the end of the link and the drawbar; that when the car went back he noticed the drawbars, and one was higher than the other; that he caught the link with his left hand, and the pin with his right, and tried to change the link from the refrigerator car to the stock car, and got the link about five or six inches out of the refrigerator-car drawbar, but not into the stock-car drawbar; that, when the car bounded back, it stopped, and then started to move down very slowly; that another car was thrown down the main line and struck the refrigerator car, when his hand was caught between the cars; that it moved the cars six or eight feet, and himself along with them; that he had to walk with his hand between the drawbars; that when he started to catch the refrigerator car, going down the main line, Roach started to cut a car off; that from his position he could see plainly down the track to where he (the plaintiff) was; that it was the usual practice and custom in switching and coupling cars, when the first coupling is not made, for the helper to stay in between and make a second attempt to couple the cars when they came together again.

On the part of the defendant, proof was given by several witnesses (present and former employees in said yard) that it was the general custom and practice in the yard to throw or kick down cars, one after another, upon the different tracks, without stopping to wait between cuts to see if helpers had come out from between the cars; that when the helper goes in between cars, and misses a coupling for any reason, it is his duty to come out before attempting to make it again, so that, if he is watching for another cut, he can catch it, if it is coming, and ride it down; that if a car that is cut off approaches a stationary car and hits it, and the

helper fails to make a coupling, it is his duty, even if it should bound back sixteen to eighteen inches, to come out before attempting to make that coupling again, and see that there is nothing else following that car that he is trying to couple; that it was the custom and practice in that yard to back in with the engine, and make up the missed couplings after the train is switched; that the duties of the helpers are to catch cars, and attend switches, and do what coupling they can; that, as between the approaching car and the coupling, it is the helper's duty first to attend to catching the car; that it was not the duty of the foreman to look out for his helpers; that the custom and practice in the yard was for each one of the crew to look out for himself; that they are supposed to look out for themselves; that they had never heard of any custom that required the foreman to wait between cuts, in sending down cars, to see whether his helpers had come out from between the cars, and had made their couplings; that it is the duty of the helper, when he misses a coupling, to come out at once and look for another car.

For the appellant there was a brief by *Burton Hanson* and *Geo. W. Bird,* and oral argument by *Mr. Hanson, Mr. C. H. Van Alstine,* and *Mr. Bird.*

For the respondent there was a brief by *Bashford, O' Connor & Aylward,* and oral argument by *R. M. Bashford* and *J. A. Aylward.*

Pinney, J.   1. The question presented by the special verdict is whether it is fairly and substantially found by it that the negligence of Roach, the foreman of the switching crew, imputable to the defendant, was the proximate cause of the plaintiff's injury.   Unless this appears from the verdict, no judgment could be given on it, and a new trial would become necessary.   This was so held in *Davis v. C., M. & St. P. R. Co.* 93 Wis. 482, in accordance with many previous

decisions, some of which were there cited. *Kerkhof v. Atlas Paper Co.* 68 Wis. 674; *Kreuziger v. C. & N. W. R. Co.* 73 Wis. 158; *McGowan v. C. & N. W. R. Co.* 91 Wis. 147. Many other decisions to the same effect have been made. *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141; *Block v. Milwaukee St. R. Co.* 89 Wis. 378; *Guinard v. Knapp-Stout & Co. Company,* 90 Wis. 123; *Deisenrieter v. Kraus-Merkel Malting Co.* 92 Wis. 164; *Klatt v. N. C. Foster L. Co.* 92 Wis. 624; *Kucera v. Merrill L. Co.* 91 Wis. 637; *Kutchera v. Goodwillie,* 93 Wis. 449. It is found "that the plaintiff's hand was crushed . . . by reason of, and as the *direct* consequence of, the negligence of Roach;" that is to say, that the plaintiff's injury was the natural consequence of the negligence of Roach, the foreman, and without the intervention of any independent agency or cause for which the defendant was not responsible. Was it necessary that it should also appear from the verdict not only that the plaintiff's injury was the direct, but the probable, result, as well, of the defendant's negligence?

The law is that the negligence of the defendant must have been the proximate cause of the injury, and the plaintiff was bound to establish this, as a necessary part of his case. When the statute providing for special verdicts was adopted, the universal rule that had theretofore existed in respect to general verdicts became at once applicable to special verdicts, namely, that a verdict must find the substance of the issue and be sufficient to support the judgment given on it, and this rule has ever since been inflexibly adhered to as to special verdicts. "A special verdict is that by which the jury find the *facts only,* leaving the judgment to the court." R. S. sec. 2857. It logically follows that the question of proximate cause, which is a fact essential to a judgment in favor of the plaintiff, must appear upon the face of the special verdict. If it does not, no judgment can be given on it. The real test of the defendant's liability for the plaint-

iff's injury is whether the negligence of its foreman was the proximate cause of the accident. "The negligence is not the proximate cause of the accident unless, under all the circumstances, the accident might have been reasonably foreseen by a man of ordinary intelligence and prudence. It is not enough to prove that the accident was the natural consequence of the negligence. It must also have been the probable consequence." *Block v. Milwaukee St. R. Co.* 89 Wis. 378. This subject underwent a careful consideration in *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141, 150–155. It was there held after careful consideration, adopting the rule laid down in the supreme court of the United States in *Milwaukee & St. P. R. Co. v. Kellogg,* 94 U. S. 469, as the rational and better rule, " that generally, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." 60 Wis. 161. This rule is supported by a great number of English and American cases there cited, and had been announced by this court as early as the case of *Kellogg v. C. & N. W. R. Co.* 26 Wis. 281. In *Sharp v. Powell,* L. R. 7 C. P. 253, it is declared that: " No doubt, one who commits a wrongful act is responsible for the ordinary consequences which are likely to result therefrom; but, generally speaking, he is not liable for damage which is not a natural or ordinary consequence of such an act, unless it be shown that he knows, or has reasonable means of knowing, that consequences not usually resulting from the act are, by reason of some existing cause, likely to intervene, so as to occasion damage to a third person. Where there is no reason to expect it, and no knowledge in the person doing the wrongful act that such a state of things exists as to render the damage probable, if injury does result to a third person it is generally considered that

the wrongful act is not the proximate cause of the injury, so as to render the wrongdoer liable to an action." In *Atkinson v. Goodrich Transp. Co.*, *supra*, the court closed the discussion of the question by saying: "We think that the decided weight of authority is in favor of the rule that in an action for negligence the defendant has the right to have the question submitted to the jury whether the result which is the ground of the action might, under all the circumstances, have been reasonably expected, not by the defendant, but by a man of ordinary prudence; and we think it very clear that no such question was submitted to the jury, either by the special verdict or by the instructions given. It would seem that it is not enough to prove that the result is the *natural* consequence of the negligence, although that fact would be *evidence* tending to show that it might have been reasonably expected." These remarks are strictly applicable to the present case, and show that the fifth question the defendant asked to have submitted to the jury was improperly refused. It is true that this question may be open to criticism, in using the words "would result," instead of "would be likely to result," etc., but the questions held to have been improperly refused in the *Atkinson Case* were subject to the same criticism. 60 Wis. 150. It is certain that the question was sufficient to call the attention of the trial court to the necessity, at least, of giving proper instructions on the subject of what would constitute proximate cause, but none were given.

Much stress was placed in the argument, by the plaintiff's counsel, upon the fact that the verdict finds that the plaintiff's injury was "the *direct* consequence of the negligence of Roach, the foreman." But this signifies, in our judgment, no more than that it was the *natural* consequence, and that there were no intermediate steps or links in the line of natural causation. While it may be evidence tending to show that the result was one which, in the light of attending circum-

stances, ought to have been reasonably foreseen as likely to occur in consequence of his negligence, it is by no means equivalent to a finding of that fact, indispensable, as we have seen, to show that his negligence, in a legal as well as in a natural sense, was the proximate cause of the plaintiff's injury. It is not equivalent to a finding that the injury was the probable as well as the natural result of the negligent act, or that it was an injury which, in the light of the attending circumstances, the foreman ought to have reasonably foreseen as likely to occur from the negligent act. To say, therefore, that the injury was the *direct* result of the negligence, is really no more than saying that it occurred in the natural line or chain of direct causation. The question of the sufficiency of this verdict has been settled by repeated adjudications, many of which have been already cited, and to which the following may be added: *Barton v. Pepin Co. Agr. Soc.* 83 Wis. 23; *McGowan v. C. & N. W. R. Co.* 91 Wis. 147; *Klatt v. N. C. Foster L. Co.* 92 Wis. 624; *Huber v. La Crosse City R. Co.* 92 Wis. 636; *Sheridan v. Bigelow,* 93 Wis. 426.

There need be no embarrassment or difficulty in conforming to the rule. The question whether the negligent act relied on was the proximate cause of the injury may be submitted by a question in substance in that form, and the court should instruct the jury as to what will constitute proximate cause, in view of the facts and circumstances, or it may be submitted to the jury to find the facts which show that within the rule, as stated, the negligence in question was, in a legal as well as a natural sense, the proximate cause of the injury, and was therefore actionable. Within these decisions, from which we are not at liberty to depart, it is plain that this verdict is fatally defective.

2. The evidence of six of the defendant's witnesses was such as to properly require the defendant's seventh question to be submitted to the jury. It related to matter within the

issue, not covered by any finding in the special verdict, namely, to the uniform custom of helpers in that yard, "who have gone between cars, to come out again immediately, if they failed to make the coupling the first time, and look for coming cars." It related entirely to the custom and duty of helpers, and had a material bearing upon the question whether the plaintiff, in the course he pursued in remaining between the cars, endeavoring a second time to couple them, on turning the link, when they were coming together again, was guilty of negligence which materially contributed to his injury. The effect of its rejection was to withdraw all evidence on the point of custom thus alleged from the consideration of the jury, and it doubtless prejudiced the defendant's case generally upon the subject of the custom that actually prevailed. There was testimony tending to show that an attempt to turn the link and make a coupling in the manner and under the circumstances stated, after having failed to make the coupling in the first instance, was a dangerous proceeding. Besides, the question proposed was material, as to whether the foreman, Roach, conceding that he was negligent in violating the custom as to his own duty, ought reasonably to have foreseen, in the light of the duty of the helpers and of the attending circumstances, that some injury would probably occur in consequence, to the plaintiff, from sending down, in the manner he did, another car after the refrigerator car. We think that the defendant was entitled to an answer to this question, and that it was error to refuse to submit it.

3. There is nothing in ch. 220, Laws of 1893, which to our minds indicates that it was intended to exclude from a case within its provisions all question as to the assumption of the risks or perils naturally and usually incident to the plaintiff's employment as a railway operative. It was not the design of the act to make the railroad company an insurer against injuries thus received by the plaintiff. There is no

question in the case as to the assumption by the plaintiff of any unusual or extraordinary risk.

4. The contention that under ch. 220, Laws of 1893, contributory negligence on the part of the plaintiff was required to be pleaded as a defense, is not maintainable. The defense of contributory negligence arises out of the facts and circumstances of the alleged injury. Before the statute, it was not necessary that it should be pleaded. *Cunningham v. Lyness*, 22 Wis. 245; *McQuade v. C. & N. W. R. Co.* 68 Wis. 616. It was not within the plan or purpose of the statute to make any change in the law of pleading. The statute relates only to questions of liability. The case of *Dugan v. C., St. P., M. & O. R. Co.* 85 Wis. 610, relates only to the burden of proof. The defense of contributory negligence would be sustained to an action under this statute, had it been silent on the subject. The mere fact that the words "without contributory negligence on his part" are in the act, when the courts would have supplied them if omitted, cannot operate either to change the rule of pleading or evidence. *Dugan v. C., St. P., M. & O. R. Co., supra.*

5. Nine pages of the printed case are directed to paragraphs in the arguments of the plaintiff's counsel to the jury, to objections to the same as improper, and rulings thereon. Of thirteen paragraphs objected to, in five instances the objection was sustained, and in still others there ought to have been a similar ruling. The general tendency of the objectionable remarks was to improperly prejudice and bias the minds of the jury, and stir up passion and resentment against the defendant; but, as there is to be a new trial, we have not thought proper to extend this opinion by a special statement of these matters. Counsel, in their vocation as such, are officers of the court, charged with important functions in the administration of justice. Theirs is a high and important trust, and in their zeal there are times when they are liable to become unmindful of the duty they owe to the

court and the cause of the administration of justice. The security of the verdict may be put in peril by the misconduct of counsel as well as of jurors. It is the duty of the trial court to bear a firm and steady hand, and see to it that the limits of just and fair discussion are not exceeded. We hold the proper rule to be — and in future cases will so apply it — that impropriety of conduct in these respects will not be cured by the mere formal announcement that the objection to it is sustained; but, to have that effect, the court must at once, and plainly, direct the jury to disregard the objectionable remarks.

It follows from the foregoing views that there must be a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.