HARPER, Respondent, vs. HOLCOMB, Appellant.

*April 7—May 2, 1911.*

*Negligence: Shooting man for deer: Degree of care required: Questions for jury: Instructions: Evidence: Competency: Special verdict: Contributory negligence: Pleading: Appeal: Review: Harmless errors.*

1. The question being whether defendant was guilty of negligence in mistaking plaintiff for a deer and shooting him, evidence of experiments made some time afterwards for the purpose of showing that defendant might readily have distinguished plaintiff from a deer if he had paid reasonable attention to the matter, was competent if the conditions were so far similar to those existing at the time and place of the injury as to render the result of the experiments of any substantial use in determining the question whether defendant exercised due care.

2. The determination of such a question of competency by the trial court will not be disturbed on review unless manifestly wrong.

3. Alleged errors in the admission of evidence, not accompanied by reference to the place where such evidence can be found in the record or printed case, will not ordinarily be considered on appeal.

4. It is a matter of common knowledge that in the deer-hunting season the region in this state visited for that purpose is traversed by so many persons that one is likely to make his appearance at any time during the ordinary hours for hunting; and a hunter is bound, before shooting, to use care commensurate with the danger to determine whether the object shot at is a deer or a man.

5. Even if, in this case, defendant had reasonable ground to suppose that the moving object at which he shot was not his guide (as it in fact was), yet he was, as matter of law, guilty of negligence in shooting as he did at such object, partly obscured by undergrowth, without waiting for such a view as would enable him to know that it was not a human being.

6. In circumstances of great danger great care is required in order to come up to the standard of ordinary care—such care as is ordinarily exercised by the great mass of mankind under the same or similar circumstances; but an instruction to the jury that one under such circumstances is bound to use "extraordinary care" and to exercise "the highest degree of care and caution" is erroneous.

7. The error in giving such an instruction is not prejudicial to defendant where he was guilty of negligence as a matter of law.

8. The right to a special verdict is the right to have the essential facts in issue, so far as they are left in controversy on the trial, submitted to the jury by questions, each involving but one of such facts and permitting of a direct answer. It does not extend to the submission of mere evidentiary matter or of conclusions of law.

9. Contributory negligence is properly treated as a single fact and submitted by a single general question in a special verdict.

10. Contributory negligence need not be specially pleaded in an action grounded on negligence.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

Action to recover for a personal injury.

The plaintiff claimed this: He went into the timber country in Iron county, Wisconsin, to serve defendant on a deerhunting expedition, his duty being to locate defendant and son in convenient places to shoot deer which he might start from surrounding territory and cause to approach near thereto. He so located them and went some distance therefrom, passing through a nearby swamp in an effort to discover deer. Not observing evidence of any he returned, traveling on an old logging road. When he arrived in sight of defendant, was within easy range of the latter's gun and about to call

to him, the latter, without exercising ordinary care, taking plaintiff for a deer, shot, the bullet striking and severely wounding him in the leg. The facts of such occurrence were appropriately stated in the complaint with a prayer for judgment.

The defendant answered, admitting all allegations in the complaint except those in respect to shooting without ordinary care, alleging exercise of such care; that plaintiff was guilty of contributory negligence, and denying the claimed amount of damage.

For the special plea of contributory negligence, defendant alleged this: Defendant was accompanied by his son. By direction they took their places a considerable distance apart upon the side of a hill where they were surrounded by timber and thick underbrush and were to remain watching for deer while plaintiff went out and made efforts to drive in any which might be in the vicinity. The understanding was that plaintiff should go in a particular general direction about a mile and return, taking about one hour's time. He had a bell and whistle with which, as he approached on the return, he was to signal in order to guard against danger of being mistaken for a deer as he passed along through the brush. Plaintiff appeared in the vicinity of defendant and his son in a very short time after they took their assigned places. Under the arrangement when he started out, he was not expected back for considerable time. He not only returned much earlier than defendant had reasonable ground to expect, but without observing the agreement as to signaling. The result was that defendant suddenly saw some animated thing in the brush within efficient range of his gun. The object, when first observed, was nearly stationary, then started rapidly forward, noiselessly, so far as defendant was concerned. Under the circumstances, from appearances to him, looking through the brush, the object was a deer and he accordingly shot, striking plaintiff as claimed. The latter knew it was very dangerous

to move toward defendant's location without giving any sig-
nal of his approach, and nevertheless omitted to use any pre-
caution in that regard.

The evidence was to this effect: Plaintiff served defendant
on hunting expeditions before the one in question.    Both were
well acquainted with the dangers of their occupation.  Plaint-
iff wore gray trousers,—quite of the color of a deer,—a red
sweater and cap, so as to render his person distinguishable to
one observing him traveling through the brush from that of a
deer.    The two started from their camp about 9 o'clock in the
morning, accompanied by defendant's son.    Plaintiff was fur-
nished with a bell and whistle with which to signal defend-
ant.    At the best for the latter, plaintiff was to go out on the
drive and when he started to come in fire a shot, or if he got
on a trail of a deer two shots, and, in any event, ring his bell
and use the whistle right along.    Plaintiff testified that he
was only to signal with his bell and whistle when he was on a
deer trail,—driving one as he thought.    When the party ar-
rived near a swamp they separated, defendant and his son
going to a location on a hill side, rising from the edge of the
swamp, while plaintiff struck off through the swamp to make
the drive.    Defendant and his son posted themselves as di-
rected some 300 feet apart.    There was an old logging road
through the swamp so located that a person traveling thereon
would pass near where defendant was posted.    Between the
latter's location and the road there was brush, so, in looking
from such location toward the road, the line of sight was
through the obstructions.    Soon after they reached the loca-
tion, but before the time expected, plaintiff approached, travel-
ing on the logging road.    He had not given any signal of any
kind.  Looking toward the road, defendant suddenly observed,
through the brush, an object which he thought might be a
deer.    He immediately drew a line on it with his gun pre-
paratory to shooting.    He hesitated an instant, uncertain
whether the object was a deer or a human being or some other

animated object.   It remained stationary for an instant, then
started forward, quickly.   Defendant could see only what to·
him appeared to be the forepart of a deer from the shoulders
down.   Without waiting to get a further view he pulled his
gun, striking the object which proved to be plaintiff.   The shot
took effect in about the middle of the left thigh, fracturing
the bone seriously.   Plaintiff was about 300 feet from de-
fendant, when shot.

According to defendant's evidence and the state of the case
at the best for him, plaintiff, contrary to the agreement as to·
signals, approached where he was shot, not only without giv-
ing signals, but some time before he could have arrived had
he taken the course suggested when the two parted,—one to·
take his place on the side of the hill and the other to make·
the drive.   Plaintiff testified that he was directed not to ap-
proach the location of defendant's son without making a noise,
because the latter was not experienced and might not use
proper care before shooting, but was told by defendant that
there was no danger of a person being shot by him for he was·
used to deer hunting; that following such admonishment he
made no noise, as, when he came out, he was not where the·
boy could see him; that he felt safe from danger of being shot
by defendant; that it was not a proper way to hunt deer to go·
through the woods making loud noises and there was no un-
derstanding that such a course should be pursued; that he was
not to ring the bell unless he was on a deer track.

The case was submitted to the jury, resulting in the follow-
ing findings: Defendant did not exercise ordinary care and
caution to distinguish what was the object shot at.   Such
failure was the proximate cause of plaintiff's injury.   There·
was no want of ordinary care on his part contributing proxi-
mately to the injury.   It will take $5,000 to compensate him
for such injury.

In due course judgment was rendered in plaintiff's favor
on such verdict.

*Edgar L. Wood,* for the appellant.

For the respondent there was a brief by *Geo. C. Foster* and *R. Sleight,* and oral argument by *Mr. Foster.*

MARSHALL, J.    Several assignments of error, argued at considerable length by counsel for appellant, as we view the case, are not very material.    However, we will refer to them briefly.

Evidence was permitted of experiments made some time after the occurrence complained of for the purpose of showing appellant might readily have distinguished respondent from a deer had he paid reasonable attention to the matter. Such evidence was competent, if the conditions were so far similar to those existing at the time and place of the injury as to render the result of the experiments of any substantial use in determining the question of whether appellant used due care.    So the objection raised only a question of competency for decision by the trial court, tested as indicated.    A determination of such a question is not disturbable on review unless manifestly wrong.    *Emery v. State,* 101 Wis. 627, 647, 78 N. W. 145.    No such plain error appears at this point.

Evidence was permitted of conversations with appellant as to duration of the treatment for respondent's injury, and likelihood of violence to appellant because of his act.    No prejudicial error is perceived in respect thereto.

Complaint is made because of the admission of evidence relating to the financial condition of respondent.    No reference is made to the place where any such evidence can be found either in the record or in the printed case.    Matters so imperfectly brought to the attention of the court are not ordinarily considered on appeal.    They are therefore passed in this instance without further notice than this brief mention.

The next complaint is as to exclusion of answers to questions given on cross-examination regarding customary precautions to avoid danger such as that which led to the injury

in question. The interrogatory was propounded to respondent as to whether it was not customary to wear red clothing besides a cap. The answer was in the negative. It was stricken out on objection as not being legitimate cross-examination. The ruling was proper as respondent had not been interrogated in chief on the subject. It was not prejudicial in any event, because respondent wore a red coat or frock in addition to his cap. If there were such a custom it was substantially complied with. If there were not, respondent used greater precaution than was usual.

Testimony was excluded tending to show that respondent made his appearance quicker than was reasonably to be expected. The idea of counsel at this point seems to have been that if, when appellant saw the object which he mistook for a deer, he did not have reasonable ground to expect respondent had been long enough absent to return, there was, necessarily, no culpable want of care in shooting as he did. That is obviously wrong.

It is a matter of common knowledge that, in the deer-hunting season, many persons are liable to be in the timber in the region where the occurrence took place, rendering it incumbent, on a person circumstanced as appellant was, to use care commensurate with the danger not to shoot at an object, seen suddenly partly obscured by the undergrowth, without first waiting for such a view as to enable such person to not mistake a human being for a deer.

Let it be conceded for the case that respondent returned unexpectedly, and that appellant was not culpably negligent in thinking that what he saw was not his companion, still there was no excuse for the shooting if he had reasonable ground to expect any human being might, within reasonable probabilities, be in the vicinity where he saw the object, and yet did not hesitate to shoot thereat till he could see it sufficiently to tell whether it was a deer or a man. He confessed that he did not deliberately, at least, look for unmistakable

evidence in that regard, such as the upper part of the body, including the head. According to his own claim, the mere momentary glimpse of the object from near the ground up about two or three feet, disclosing only, apparently, the forelegs and shoulders of the supposed deer, did not give any opportunity to observe whether the object had a red cap, or observe whether it had the characteristics of what he was waiting for. So whether he had reasonable ground to expect his companion had been absent a sufficient length of time to return does not appear to be efficiently material.

Other rulings on evidence referred to in the brief of counsel for appellant, do not appear to merit attention, especially in view of what has been said and the obvious carelessness of appellant, as we view the matter.

The court after having correctly defined the term "ordinary care" proceeded to elucidate the matter with reference to the case in hand in this way:

"Firearms are extraordinarily dangerous, and a person who handles such weapons is bound to use extraordinary care to prevent injury to others."

"The defendant *Holcomb* owed a duty to his guide, *Harper,* under the circumstances of this case, which required him to exercise the highest degree of care and caution before shooting, in order to distinguish whether the object at which he shot was an animal or whether it was *Harper.*"

"If the circumstances were such as to make it doubtful, however slight such doubt might be, he would have no right to shoot but would be guilty of a want of ordinary care in so doing."

The quoted language demonstrates that, unless a trial judge is well grounded in the philosophy, so to speak, of a rule of law and can safely resort to an original method of explaining it, and use words in such a way as to accurately impress the nature of the rule, as applied to a given state of facts, upon the minds of others, he is quite as likely to enter the region of danger in indulging in a new way of elucidation and applica-

tion, as in a new way of stating the rule itself which has many times led to serious difficulties.

It is quite evident to us that the circuit judge merely intended to instruct the jury that, on account of the dangers incident to the business appellant was engaged in, very great care was required in order to come up to the standard of ordinary care,—such care as is ordinarily exercised by the great mass of mankind under the same or similar circumstances. But we must say the use of the words indulged in for that purpose does not meet with our approval. It may be the jury got the idea which the judge, in the faulty way, endeavored to convey, but that is not free from doubt. If they got the correct idea they did so by taking the judge at what he meant instead of giving to words their literal meaning. That is the jury were left to gather the correct thought by construction. That is an unsafe position to put a jury in. They should not be left to contend with any difficulty arising from obscurity of meaning of language used to instruct them.

True, what would be ordinary care under some circumstances would not be under others. That was very accurately explained here in the early case of *Wheeler v. Westport,* 30 Wis. 392. As the danger increases and the seriousness of injuries liable to occur from failure to avoid creating, or avoid meeting such danger, increases the *quantum* of care should increase and, as matter of common knowledge, with the great mass of mankind does increase. But while that is true there is, in circumstances of great danger, the same as in those of little peril, the three well known degrees of care. To say in either situation that one must exercise the very highest degree, in order to be free from failure to exercise ordinary care, would be palpably wrong. Where very much, as where very little, care is required there is the medium denominated ordinary care. When the trial judge said that appellant was required to "exercise the highest degree of care and caution," taking the language by itself and literally, he obviously left

no room for a *quantum* of care greater than that of ordinary care. True, great care was required of appellant, but only because, ordinarily, such care is exercised, or must be presumed to be exercised, by the great mass of mankind under the same or similar circumstances. The use of the term "highest degree" is the crowning fault of the matter.

Another fault in the court's language above discussed may well be given a passing notice. The idea conveyed was that it was the duty of appellant to use great care in respect to determining whether the object he saw and which tempted him to shoot was "an animal or whether it was *Harper*,"—as if in his watching for deer he was required only to be careful not to mistake *Harper* for one,—as if *Harper* was the only human being appellant had any reasonable ground to expect might come within the range of his gun. The court took too narrow a view of the situation by far. The jury might well have been told that, under the circumstances in which appellant was placed, he was required to use great care in order to come up to the standard of ordinary care, not to shoot at a human being, mistaking such being for a deer.

Counsel for respondent refer to some such ambiguous and improper language as used here having been approved in foreign jurisdictions. That does not persuade us at all to depart from the plain, accurate, and only safe statement of the proper degree of care requisite to freedom from actionable negligence or fatal contributory negligence, which has uniformly been approved by this court and by most other courts which have dealt with the matter intelligently and with due consideration.

Notwithstanding the foregoing, it is considered that the faulty instruction was not prejudicial because, from the undisputed situation,—from the evidence of appellant himself,— he was negligent as a matter of law in shooting as he did. Knowing, as we must, that in the hunting season for deer the region which persons visit in search thereof is commonly trav-

ersed by so many persons that one is liable to make his appearance at any time during the ordinary hours for hunting, and knowing, as we must, the ordinary regard for safety of human life, we must assume that a hunter, as a rule, upon seeing an animated object within range of his gun looks carefully to see the unmistakable distinguishing characteristics between a human being and a deer or other animal before shooting at it. To shoot upon merely seeing through the underbrush a "flash," then apparently two supports, about the length of a man's limbs, for the body or something, and a quick movement—not waiting to observe the upper part of the body, particularly the head—as appellant confessed was the course he pursued, might naturally and within probabilities lead to just such a distressing occurrence as happened in the instance under consideration. To hold appellant guilty of, merely, a want of ordinary care is putting the matter quite mildly. If he was charged with that reckless disregard which enters the region of gross negligence and creates civil liability regardless of contributory negligence it could not be avoided without difficulty. If the court upon the trial of this case had taken the question of appellant's negligence from the jury it is not perceived how the ruling could be disturbed. It may be that would have been done had the idea not been so much dwelt upon during the trial both by counsel on both sides and the court, that it was only *Harper,* appellant was bound to look out for, that if he had in the exercise of ordinary care good reason to think that *Harper* had not returned he was justified in shooting upon obtaining a mere glimpse and then a little better view of something which he thought was the forelegs and breast of a deer. He said substantially as indicated. I just saw a flash and turned around and dropped my gun—that is pointed his gun at the object causing the flash in readiness to shoot. I hesitated. I was not, you might say, real sure whether the object was a man or a deer. The object was stationary for an instant. Then it kind of jumped.

It looked to me like a deer. I could see from its shoulder down. It was in the direction *Harper* was to come from. It looked like the forepart of a deer and I fired. We consider that, as a matter of law, a confession of culpable carelessness. One would, naturally, think that a reasonably careful man, circumstanced as appellant was, would reserve his fire till he could observe the trunk of the object attracting his attention, and probably the head,—not take the chance of what appeared to be the shoulders and forelegs of a deer, being in fact the lower part of the person of a human being.

Complaint is made because the court refused to submit in the special verdict questions covering, singly, matters set forth in the answer claimed to evince contributory negligence. The statutory right to a special verdict is limited to that of having the essential facts, not mere evidence thereof, in issue, so far as left in controversy on the trial submitted to the jury by questions, each involving but one of such facts and permitting of a direct answer. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 312, 80 N. W. 644. What was said in that case was but a reiteration of what had been frequently said before and has been said many times since. We repeat again:

"A special verdict" "is a finding upon all the material issues of fact raised by the pleadings. A failure to distinguish between such facts and the numerous evidentiary circumstances which may be the subjects of controversy on the evidence and are relied upon to establish the ultimate facts upon which the case turns, often leads to unjust criticism of a special verdict. A conclusion is not one of law because it is reached by a process of reasoning from many primary circumstances. While such circumstances may be in dispute, the real question is, Do they'lead with reasonable certainty to, and establish, the fact alleged by the pleading upon the one side and denied by the pleading upon the other? If the subject of the allegation in the complaint be one of law, or of mere evidence, it has no proper place in the pleading, and hence no necessary place in the special verdict. By the complaint, certain facts are alleged to exist constituting the plaint-

iff's cause of action and warranting the remedy sought. Those facts, if put in issue by the answer, and controverted on the evidence, in case of a special verdict, must appear to exist thereby [subject to the statute supplementing the verdict], or the conclusion of law must be against the plaintiff. The object of a special verdict is solely to obtain a decision of issues of fact raised by the pleadings, not to decide disputes between witnesses as to minor facts, even if such minor facts are essential to and establish, by inference or otherwise, the main fact."

Thus, it will be seen, mere pleaded evidentiary matter or conclusions of law need not be covered by special questions. The real test of what is required for a special verdict is the material issues of fact found in the pleadings, each of which is a subject of reasonable controversy on the evidence, to be covered by a question. If that simple test were uniformly applied there would be little or no trouble about the form of a special verdict and there would be less criticism and impatience with a branch of the Code well designed to aid in the administration of justice.

In the light of the foregoing the questions requested by appellant were sufficiently covered by the general interrogatory as to whether plaintiff was guilty of a want of ordinary care proximately contributing to his injury. That was the fact in issue. It was not necessary for respondent to specially plead freedom from such negligence. True, if the facts pleaded by him had disclosed such negligence, the complaint would have been open to a demurrer for insufficiency, but in the absence of some efficient showing to the contrary ordinary care on his part was to be presumed. So, also, it was not necessary for defendant to specially plead contributory negligence on plaintiff's part. In the very nature of the case, due care on plaintiff's part in such an action is put in issue by a general denial whether specially pleaded in the complaint or not. This court has many times so held. *Cunningham v. Lyness,* 22 Wis. 245, 250; *Potter v. C. & N. W. R. Co.* 20 Wis. 533;

*Jones v. S. & F. du L. R. Co.* 42 Wis. 306, 310; *McQuade v. C. & N. W. R. Co.* 68 Wis. 616, 32 N. W. 633; *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348, 361, 71 N. W. 372.

The rule stated was made very emphatic in *McQuade v. C. & N. W. R. Co., supra,* the court holding that under some circumstances the special plea may be stricken out without being prejudicial because it is entirely unnecessary.

Thus it will be seen contributory negligence has been uniformly treated as a single fact, and in issue in an action grounded on negligence whether specially pleaded or not. Hence the practice, in general, under the special-verdict statute has been to submit the matter as involving a single issue. That has been followed so long that it may well be considered, in connection with the settled practice respecting the manner of raising the issue by pleadings, as having become a part of the special-verdict statute itself.

The question is raised as to whether the evidence did not establish contributory negligence as a matter of law. We mention the matter to show that it has not been overlooked. However, in our judgment, the question was so plainly one for the jury, under all the circumstances, that it is not thought best to prolong this opinion for the purpose of discussing the matter.

Some other questions are suggested for consideration but they do not appeal to us as requiring mention in detail or discussion. It is considered that no harmful error is disclosed by the record and that the judgment must be affirmed.

*By the Court.*—So ordered.