WILFERT, Respondent, vs. NIELSEN, Appellant.

*May 14—June 10, 1947.*

*Floyd W. McBurney,* attorney, and *Albert E. Koch* of counsel, both of Madison, for the appellant.

For the respondent there was a brief by *Rieser & Mathys,* and oral argument by *Willard S. Stafford,* all of Madison.

FRITZ, J.   The plaintiff, Wilfert, was injured by several pellets shot from a gun fired by the defendant, Nielsen, while hunting pheasants on October 20, 1945.   Nielsen and several hunting companions, approaching from the west, came to a north-and-south fence separating a cornfield on the west from a hog field, which extended eastward to a concrete highway running north and south.   This highway intersected, at the northeast corner of the hog field, a dirt road extending east and west along the north side of the hog field and also the cornfield; and along that side of these two fields there was a fence with weeds, underbrush, and a few trees between the fence and the dirt roadway.   While plaintiff was walking westward in the intersection of the two roads and looking southwesterly across the hog field in search, as he claims, of his dog, he saw Nielsen and his companions about one hundred twenty yards away as they were coming out of the cornfield and approaching the north-and-south fence, and were over one hundred twenty yards south of the junction thereof and the fence between the dirt road and the hog and cornfields.   When plaintiff,—walking westward along the north edge of the trees and undergrowth and along the south edge of the dirt roadway,—was about twenty feet west of the intersection of the roads, he shouted to defendant's party that there was some game along said north-and-south fence row.   Defendant responded and proceeded to work northward with his dog for pheasants along that fence row, and when defendant had walked about twenty-five feet northward, and plaintiff had walked to about seventy-five feet west of the intersection of the roads, a pheasant was flushed from that fence row and flew in a northerly direction along the row, and was shot by the defendant.   Defendant then checked the position of the plaintiff and saw where he was standing, and that he had walked westward about one

hundred seventy feet from the intersection of the roads and was standing next to the large black cherry tree. When defendant, proceeding northward and working the fence row with his dog for another pheasant, had walked about twenty-five feet on the west side of the fence, another pheasant was flushed and got up from the east side of the fence, north of defendant, and flew in a northerly direction. When that second pheasant got up about three feet, defendant shot at it in a northerly direction, but failed to kill it. However, some of the pellets then fired by defendant struck and injured the legs of plaintiff below his knees, while he was taking two shots at the pheasant which plaintiff had missed and which flew northward across the dirt road. In the interval between the shots fired by defendant at the first pheasant and then at the second, plaintiff had moved westward along the south side of the dirt road toward the junction of the two fences. He admitted in testifying that in this interval between defendant's two shots, he walked westward about one hundred feet, so that he was about twelve feet east of the north-and-south fence when the pellets hit his legs, and that while he was thus proceeding westward on the highway he was looking at and saw the defendant. Plaintiff also admitted that when defendant raised the second bird, plaintiff was on the southerly side of the right of way of the road, about fifteen feet in an easterly direction from the intersection of the north-and-south fence line and the road; that as he walked down the road in a westerly direction he watched Nielsen a little bit; that when struck, plaintiff was about twelve feet east of the north-and-south fence; and that there were some bushes and vines along there, but his vision was unobstructed at the point where he was hit. It is evident from the proof that weeds, bushes, and other underbrush along the fence line, on the south side of the dirt road, materially obstructed at times defendant's view of part of plaintiff's body from the position of defendant immediately preceding the accident.

Under the proof in relation to the facts and circumstances stated above,—and particularly plaintiff's admissions as to his walking, between defendant's firing of the first and the second shot, about one hundred feet westward until he was only twelve feet east of the north-and-south fence when he was hit by the pellets, and that while so walking he was looking at and saw what defendant was doing; and that he knew that when a hunter is trying to flush birds ahead of him, it is the natural thing for the bird to fly away from him, and that he saw the second bird fly in a northerly direction along the fence row,—it was clearly within the province of the jury to believe that plaintiff knowingly brought himself dangerously within the range and probable line of defendant's fire, upon shooting at the second pheasant. Under the evidence it was obviously plaintiff's purpose, in thus recklessly proceeding westward to twelve feet east of the north-and-south fence, to get into a suitable position for him to fire at the second pheasant, although he could have seen and should have appreciated, in the exercise of the degree of care required to avoid placing himself in a dangerous position, that defendant was intending to again fire at that pheasant,—as plaintiff himself did twice immediately upon defendant's firing the shot which injured plaintiff.

Consequently the jury was clearly warranted in finding, as it did, that Wilfert was causally negligent at the time and place of the accident in proceeding westerly along the dirt highway. And, on the other hand, the jury was warranted in finding also that Nielsen was causally negligent at the time and place of the accident in firing his gun in the direction of the dirt highway. However, in connection with these findings the jury found that of the entire causal negligence ninety per cent was attributable to Nielsen and only ten per cent thereof was attributable to Wilfert. Under the above-stated facts and circumstances, it was incumbent upon Nielsen, in firing his gun,—as well as upon Wilfert in avoiding getting into a position toward which

Nielsen, patently intent upon killing the pheasant, was likely to fire,—to use care commensurate with the danger on Nielsen's part of shooting toward Wilfert if he suddenly was not seen because of the partly obscuring undergrowth; and it was likewise incumbent upon Wilfert to use the care commensurate on his part in order to avoid getting into such dangerous position. *Harper v. Holcomb*, 146 Wis. 183, 189, 130 N. W. 1128. This latter duty Wilfert clearly neglected to perform when he knowingly walked so closely within the range and probable line of Nielsen's fire upon shooting at the second pheasant, which was likely to also fly northward. In view of these circumstances, Wilfert's negligence was certainly the cause of his injury to a considerably greater extent than merely ten per cent of the total causal negligence as was found by the jury. Wilfert testified he saw Nielsen as he proceeded along the north-and-south fence line and watched him a little bit and was looking for his dog most of the time. But when he could see and then knew that the dog was not his, his only reason for continuing to walk along the side of the dirt road to ten or twelve feet east of the north-and-south fence obviously was that he expected the pheasant to fly over this road, and to fire at the bird,—as he finally did,—if Nielsen missed shooting it. As Wilfert thus voluntarily placed himself where he could and should reasonably have anticipated he would be in Nielsen's line of fire, while the latter's view of him was at least partially obstructed by the intervening foliage along the east-and-west fence line, Nielsen's causal negligence was materially less than ninety per cent of the total causal negligence. Consequently, the jury's findings as to the percentages of the causal negligence of the respective parties are obviously so grossly disproportionate that they cannot be sustained. Defendant's motion for a new trial on the ground that those findings were perverse and contrary to the overwhelming weight of the evidence should have been granted and a new trial ordered by the court.

*Hammer v. Minneapolis, St. P. & S. S. M. R. Co.* 216 Wis 7, 255 N. W. 124.

*By the Court.*—Judgment reversed, and cause remanded with directions for further proceedings as directed in the opinion.