SCHRANK, by Guardian *ad litem,* and others, Respondents, v. ALLSTATE INSURANCE COMPANY and another, Appellants.

*No. 54.   Argued February 2, 1971.—Decided March 2, 1971.*
(Also reported in 184 N. W. 2d 127.)

---

248

For the appellants there was a brief and oral argument by *David B. Halling* of Milwaukee.

For the respondents there was a brief and oral argument by *S. A. Schapiro* of Milwaukee.

BEILFUSS, J.   The issues presented by the appeal and the motion to review are:

(1) Did the order granting a new trial in the interest of justice comply with the statutory requirements of sec. 270.49 (2), Stats.?

(2) Was the negligence of the defendant-vehicle-driver causal as a matter of law?

(3) Was the form of the cause question in the verdict erroneous? ·

(4) Is the plaintiff, Michael Schrank, entitled to a new trial in the interest of justice by order of this court pursuant to sec. 251.09, Stats.?

On January 26, 1970, motions after verdict were heard by the trial court. The respondents moved for a new trial on various grounds, and the appellants moved for judgment on the verdict dismissing the complaint. The trial court on the same day rendered an oral decision from the bench granting respondents a new trial in the interest of justice. However, this decision was neither transcribed nor filed as a part of the record until April 17, 1970. The notice of appeal was dated March 20, 1970, served on respondents' counsel March 23, 1970, and filed with the transcript on April 17, 1970.

A written order granting the new trial was entered on February 2, 1970, and only stated:

"That plaintiffs' motion for a new trial is granted on the grounds that it is in the interest of justice." [1]

· Sec. 270.49 (2), Stats., provides as follows:

"Every order granting a new trial shall specify the grounds therefor. In the absence of such specification, the order shall be deemed granted for error on the trial. No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in

---

[1] It is to be noted that the trial judge in his oral decision on January 26, 1970, did direct, "Counsel for the plaintiffs will prepare an order in conformity with this decision. . . ."

detail therein or the memorandum decision setting forth such reasons is incorporated by reference in such order. . . ."

There is no question but that the order, which granted a new trial in the interest of justice, fails to comply with the statutory requirements because it does not state the reasons in detail which prompted the court to make such order, nor is there an "incorporation by reference" of a memorandum decision setting forth such reasons. *State v. La Fernier* (1967), 37 Wis. 2d 365, 155 N. W. 2d 93; *McPhillips v. Blomgren* (1966), 30 Wis. 2d 134, 140 N. W. 2d 267; *Moldenhauer v. Faschingbauer* (1964), 25 Wis. 2d 475, 131 N. W. 2d 290, 132 N. W. 2d 576; *Gillard v. Aaberg* (1958), 5 Wis. 2d 216, 92 N. W. 2d 856.

In its oral decision from the bench the trial court stated:

"It is, therefore, the court's conclusion that the answers arrived at by the jury are inconsistent and after a finding of negligence it is incredible that there be no causal negligence found. The court will order a new trial in the interests of justice."

This court has held that a decision on motions after verdict, which is given orally from the bench and then transcribed and filed with the clerk of court as part of the record in the case, does constitute a "memorandum decision" within the meaning of sec. 270.49 (2), Stats. *Campbell v. Wilson* (1962), 18 Wis. 2d 22, 117 N. W. 2d 620. However, even if the order here had made reference to the court's decision it still would not have been sufficient to comply with sec. 270.49 (2). In *Campbell v. Wilson, supra,* we said at page 28:

"In the instant case, no memorandum decision was on file as part of the record when the order granting a new trial was entered on March 2, 1962. In fact, the transcript of the trial court's decision on motions after verdict was not so filed until March 15, 1962. Since we

hold that a transcript of a verbal decision rendered from the bench does not become a 'memorandum decision' until filed as part of the record in the case, no 'memorandum decision' existed on March 2, 1962, which the order for new trial could incorporate by reference. We interpret the statutory provision, which permits the order granting a new trial in the interest of justice to incorporate by reference the reasons therefor set forth in the memorandum decision, to require that the memorandum decision be in existence and on file when the order incorporating same is entered.

"Inasmuch as the appealed order, which granted a new trial in the interest of justice, did not comply with sec. 270.49 (2), Stats. 1961, as herein interpreted, it must be reversed."

In this case no memorandum decision was on file as part of the record when the order granting a new trial was entered on February 2, 1970. In fact, the transcript of the trial court's oral decision on motions after verdict was not filed until April 17, 1970.

The order appealed from, which granted a new trial in the interest of justice, did not comply with the requirements of sec. 270.49 (2), Stats., and therefore must be reversed.

The respondents seemingly concede that the order for a new trial is fatally defective and will be reversed, and pursuant to their motion for review urge that this court exercise its discretionary power under sec. 251.09, Stats., and grant a new trial on the grounds that the finding that the negligence on the part of Mrs. Jensen was not a cause is against the great weight and clear preponderance of the evidence, the trial court erred in the wording of the causation question in the special verdict, and the real controversy between the parties has not been fully tried.

When faced with a similar question in *Cary v. Klabunde* (1961), 12 Wis. 2d 267, 270, 271, 107 N. W. 2d 142, this court said:

". . . We find it unnecessary to pass on the question of whether there would have been an abuse of discretion on the part of the trial court directing a new trial in the interest of justice, if a proper order complying with sec. 270.49 (2) had been entered. For the purposes of our decision we will assume that there would have been none. However, this court should not exercise its independent discretion to direct a new trial in every instance where we would be compelled to find no abuse of discretion on the part of the trial court in attempting to direct a new trial in the interest of justice, but in which the order is found to be defective for noncompliance with sec. 270.49 (2). Our discretionary power in this respect should be sparingly employed, and ought not to be invoked except in a situation where we are convinced that there has been a probable miscarriage of justice if the jury's verdict were permitted to stand. . . ."

In deciding the questions raised by the motion to review, this court will approach them as if the trial court had not entered the improper order, and therefore we will not look for reasons to sustain the trial court's conclusion but rather will seek to sustain the jury verdict. Cf. *Quick v. American Legion 1960 Convention Corp.* (1967), 36 Wis. 2d 130, 135, 152 N. W. 2d 919. The rule governing this court's review is that the verdict of the jury must be sustained if there is any credible evidence which, under any reasonable view, supports that verdict. *Nieman v. American Family Mut. Ins. Co.* (1968), 38 Wis. 2d 62, 65, 155 N. W. 2d 809; *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 772, 151 N. W. 2d 706.

The first question becomes whether the negligence of the appellant-Jensen as found by the jury was causal as a matter of law.

Mrs. Jensen testified that as she proceeded east on Highland Avenue there was very little traffic on her side of the street but that the westbound lanes were blocked with bumper-to-bumper traffic. She was driving about 18 inches to two feet to the right of the center line

at a speed of seven to 10 miles per hour. When she was somewhere past the middle of the block, Michael darted out from between two westbound cars into the path of her car. He was at about the left headlight of her car when she first saw him, and perhaps a few feet ahead of her car. Mrs. Jensen stated that she had not been able to see him crossing because the stalled westbound cars obstructed her vision of that part of the road. When she first saw Michael she immediately applied her brakes and stopped in a distance of about 10 feet to one car length. Mrs. Jensen testified that a police officer measured the skid marks made by her car and that they were 18 inches. However, Police Officer Czeszynski testified that he did not observe nor measure any skid marks, though he indicated that he did not know whether or not his partner had. There is no indication of any skid marks in the accident report.

Witness Frank M. Racs was in his auto in the left-hand westbound lane on Highland Avenue at the time of the accident. He testified that he first saw Michael run out from the rear of a house on the northeast corner of 15th Street and Highland and continue running "about as fast as he could go" in a southeasterly direction. He stated that Michael kept looking back over his left shoulder, and not knowing what the boy would do, he stopped his car completely. Michael kept running at the same speed and cut in front of his car, passing a "couple feet" in front of it, and continued into the eastbound lane where he was struck by Mrs. Jensen. Mr. Racs testified that when Michael entered the eastbound lane his front bumper was just about even with Mrs. Jensen's bumper, and Michael was running diagonally between them so that he would have entered the eastbound lane a few feet ahead of her car. He stated that from the time of the impact until Mrs. Jensen's car stopped completely, it traveled approximately half a car length and ended up even with

the middle of his car. He did not know how much of a distance there was between his car and the one immediately in front of him since he was concentrating on watching Michael.

The testimony of the other witnesses [2] does very little to prove precisely how the accident occurred. George Alvarez testified that Michael was crossing the street on an angle at a "fast walk" and was struck by Mrs. Jensen's car. Cheryl Reichwald testified that Michael was crossing the street and when he reached the middle was struck by Mrs. Jensen's car. She stated that she could not remember whether he was walking or running. However, at the time of the accident she told the investigating police officer that he ran into the street. Mary Ella Rollins testified that she did not see the accident but that she had seen Michael enter the street and that he was probably running.

The test adopted by this court in determining whether negligence is causal is the "substantial factor" test. *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.* (1966), 29 Wis. 2d 620, 627, 139 N. W. 2d 595; *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. 2d 29. Only if the facts indicate that reasonable men could not differ as to whether a party's conduct was a substantial factor in producing the accident does the question of causation become one of law which a court may decide either prior to a verdict or upon appeal. Where reasonable men might differ, which includes all but a few cases, the question is one for the jury. And upon review by this court the same standards applicable to a finding with respect to negligence are

---

[2] In our review of the evidence to determine whether an answer of a jury verdict should be changed, we look only to the credible evidence to sustain the finding; however, because the plaintiffs request a new trial under sec. 251.09, Stats., upon their claim that the jury finding is against the great weight and clear preponderance of the evidence, we briefly refer to other evidence.

applicable with respect to a finding of causation, *i.e.*, is there any credible evidence which, under any reasonable view, supports the verdict. *Hoeft v. Milwaukee & Suburban Transport Corp.* (1969), 42 Wis. 2d 699, 711, 168 N. W. 2d 134.

It is our opinion that this case presents a clear jury question and that the facts in the record do not compel a determination that Mrs. Jensen was causally negligent as a matter of law. The jury was instructed that before it could find the relationship of cause and effect to exist, it must appear that the negligence under consideration was a substantial factor in producing the accident. If Michael ran or darted from between two stopped cars and immediately in front of Mrs. Jensen's car, as the testimony indicates, the jury could have reasonably concluded that, even though she was negligent as to lookout, a proper lookout would not have given her time to manage and control her vehicle so as to avoid the collision. Under these circumstances we cannot say, as a matter of law, that Mrs. Jensen's negligence was a substantial factor in causing the accident or resulting injuries.

A similar fact situation was presented in *Altiere v. Bremer* (1968), 39 Wis. 2d 548, 159 N. W. 2d 664, where the defendant driver had watched the four-year-old boy for approximately 350 feet, and as she slowed her auto while approaching the boy he suddenly darted from the edge of the highway across the road and in front of her car. The jury found that the defendant driver was negligent but that such negligence was not causal. This court found that the case presented a "pure jury question" as to causation, and in affirming the verdict stated, at page 551:

". . . If the plaintiff darted in front of the car, as Mrs. Bremer claims, the jury could have reasonably concluded that the accident was unavoidable and that Mrs. Bremer's negligence, if any, was not a substantial factor in causing the accident."

The respondents seek to distinguish the *Altiere Case* on the basis that in that case there was no evidence as to whether or not Mrs. Bremer had sounded her horn as she approached the child, whereas in the instant case Mrs. Jensen testified that she did not blow her horn. Respondents instead rely on *Conery v. Tackmaier* (1967), 34 Wis. 2d 511, 149 N. W. 2d 575, which contained language to the effect that had the defendant sounded his horn he would have warned the children of his approach and given them time to stop. However, respondents fail to point out that this language followed the court's conclusion that the defendant's negligent lookout was causal as a matter of law since the children had emerged from behind a house and crossed the sidewalk area before entering the street, and despite the fact that there was nothing to prevent the defendant from seeing them all during this period, he admitted that he did not see them until they had entered the street. Had he maintained a proper lookout he would have seen the children sooner, and then the use of his horn would have been effective. The facts of the *Conery Case* are significantly different from those of this case, and it must be distinguished on that basis.

The respondents also argue that a finding that Mrs. Jensen's negligence was not causal is against the great weight and clear preponderance of the evidence as to her management and control of her auto. Counsel expressed this concept as being "bifurcated negligence," namely, that even if she was not negligent in causing the accident because of an improper lookout, she was causally negligent with respect to Michael's injuries by not stopping her auto immediately upon the impact.

The respondents' factual basis for this argument is that the block between 15th and 14th Streets on Highland Avenue is about 300 feet long. The distance from the alley located in the middle of the block to the curb of

14th Street is 163.04 feet. Police Officer Czeszynski testified that when he arrived at the scene of the accident he found blood on the street approximately between 66 and 71 feet west of the west curbline of 14th Street. Counsel argues that Michael was struck in the area of the alley, and therefore he must have been dragged for about 100 feet before Mrs. Jensen came to a complete stop. He corroborates this theory by the nature of Michael's head injury, which he claims indicates that a portion of his scalp was worn away by being dragged or rubbed against a wheel, and the testimony of George Alvarez. Alvarez testified that after the car struck him, Michael fell and tried to get up, but then fell again and was dragged by the car. However, other portions of his testimony do not substantiate the argument that Michael was dragged for any distance. Initially he testified that he turned away when he saw Michael struck because he did not want to watch it, and that he did not know how far Michael was dragged because he had turned away. He did state that Michael was dragged "a little bit" or a "little more farther."

With regard to respondents' measurements, there was no testimony to establish precisely where the point of impact occurred, except that it was somewhere past the middle of the block. The most detailed estimate was given by Alvarez who seemed to indicate that it was closer to 14th Street than it was to the middle of the block. The midpoint between the alley and 14th Street would have been approximately 80 feet west of 14th Street, and assuming that the impact occurred slightly to the east of this point, the point at which the blood was found would correspond with a stopping distance of about one car length.

In any event, both Mrs. Jensen and Frank Racs testified that her car traveled between 10 feet and one car length after striking Michael. Absent more precise

evidence as to the exact point of impact, or in fact the exact point where her car came to rest, there is nothing conclusive in the record to indicate that Mrs. Jensen did not stop as quickly as possible, or that she was in any way negligent in controlling her car after the impact occurred.

With respect to the nature of Michael's head injury, there is nothing of a persuasive nature in the record to show that it indicates that he was dragged. Though two doctors testified in some detail as to his injuries, neither one gave any testimony to indicate that it could not have been caused by the initial impact or falling, or in fact that it was caused by dragging.

We conclude that the finding of the jury that the negligence of Mrs. Jensen was not causal is not against the great weight and clear preponderance of the evidence and cannot be a reason for the exercise of our discretion in granting a new trial under sec. 251.09, Stats.

The respondents argue that the second question of the special verdict was erroneously worded. That question reads: "Was such negligence on the part of the defendant, Esther Jensen, a cause of the accident?" The respondents contend that the question should have asked whether such negligence was a cause of Michael's injuries, and not whether it was a cause of the accident. This objection was raised by respondents' counsel prior to submission of the verdict.

In instructing the jury the trial court stated that in answering the causation questions of the verdict they were to "consider the accident as including all portions of the incident that resulted in injury."

In order to sustain the respondents' contention it would be necessary to show some proof of causation separate and distinct from the impact itself. As discussed above, the evidence is not sufficient to compel a finding that Mrs. Jensen was negligent with respect to stopping her

car subsequent to the impact, nor to indicate that Michael's injuries were caused by anything other than the initial impact and subsequent natural forces.

In any event, the court's instruction to the jury was sufficient to encompass any incident which contributed to the injury.

The respondents' final argument is that a new trial should be granted under sec. 251.09, Stats., because the real controversy between the parties has not been fully tried. This argument is based upon the fact that there was no comparison of causal negligence because the jury found that Mrs. Jensen's negligence was not causal.

In order to sustain this contention it would be necessary for the court to conclude that Mrs. Jensen's negligence was causal as a matter of law, and therefore a comparison of their respective negligence was required. However, as discussed earlier, there is nothing in the record of this case to require such a finding. The question of causality with respect to Mrs. Jensen's negligence was properly one for the jury and its finding is amply supported by credible evidence. Under these circumstances the jury could not have properly made a comparison of causal negligence.

We believe that the issues of the case have been fully and fairly tried and determined by the jury and that its verdict is amply supported by the evidence.

The order of February 2, 1970, granting a new trial in the interest of justice must be reversed and the cause remanded with instructions to enter judgment on the verdict dismissing the respondents' complaint.

*By the Court.*—Order reversed, with directions.