STEWART, Plaintiff-Respondent, v. WULF, and another, Defendants-Appellants.

Supreme Court

*No. 76–072. Argued October 2, 1978.—Decided October 31, 1978.*
(Also reported in 271 N.W.2d 79.)

464

For the appellants there was a brief by *Robert G. Krohn* and *Wickhem, Consigny, Andrews & Hemming, S. C.,* of Janesville, and a reply brief by *Robert G. Krohn* and *O'Leary, Sutherland & Krohn* of Janesville, with oral argument by *Robert G. Krohn.*

For the respondent there was a brief by *Edward Grutzner* and *Grutzner, Byron & Holland, S. C.,* of Beloit, and oral argument by *Edward Grutzner.*

HANSEN, J.   The principal issues relate to the questions of causation and alleged trial court errors.   The amount of the damages is not an issue on appeal.

During the first two weeks of December, 1972, Mark C. Stewart, the respondent, was a guest at the family

home of Thomas M. Wulf, the appellant. Both were twenty years of age at the time. The bathroom in the home was located on the second floor. During the evening of December 13, 1972, Stewart went upstairs to the bathroom. He found it occupied. On the way to the bathroom he passed an upstairs bedroom which he had reason to believe was occupied by two of the defendant's younger sisters, ages eight and ten years. The door was open and he saw a pistol on the bed.

Respondent testified that he had been shown this pistol on the day of his arrival by Mark Wulf, the appellant's seventeen-year old brother, and had also seen the pistol three or four days later in the living room. Respondent testified that he knew the bedroom was used by appellant's younger sisters, and that his shock at seeing the gun in the children's bedroom prompted him to enter the room to examine the gun to determine whether it was loaded. The gun was a single-shot pistol that had the appearance of a revolver.

Respondent testified that he handled the gun in the following way: (These actions were demonstrated for the jury, first using a pen and later with the gun itself.) He picked up the gun and holding it with both hands pointed it away from him toward the wall. The judge described this position as appearing that his hands were clasped in prayer. Next he sat down on the bed and looked through the sight. He then pointed the gun at the floor because the gun might have been loaded and, he explained, "walls can be thin." He rotated or turned the gun in his right hand without placing his finger on the trigger or in the trigger guard. He said he did not "twirl" the gun. He explained, "I was thinking before I was going to unload it. Maybe I was feeling my coordination or something." He then passed the gun from right hand to left and back to right again. Finally, in order to look in the chamber, he pulled the hammer back with his

right thumb while holding the gun in both hands. At this point he was startled by a loud noise, such as a door slamming.

Respondent lost control of the gun, fumbled with it in the air and attempted to catch it before it struck the floor. In the process the gun fired and the bullet entered his chest just above the sternum. The respondent was taken by ambulance to the hospital where he underwent surgery. There was no witness to the incident which resulted in his injury.

Respondent testified that he had had some previous experience with guns, that he did not know how to load or unload this particular gun, and that his actions were an attempt to familiarize himself with the gun and determine whether it was loaded.

Respondent said he realized there was a chance that the gun was loaded. He testified that he had held this same gun momentarily when Mark Wulf first showed it to him and that he had seen that it was unloaded at that time. He said that both appellant and Mrs. Wulf had told him that guns were always to be kept unloaded in the house. Appellant admitted making such a statement but Mrs. Wulf denied that she had said anything about guns to respondent. Respondent said he did not know that the Wulfs had gone hunting that day.

Sheila Stewart, the respondent's wife (who as Sheila Tucker and the appellant's girl friend was also staying with the Wulfs at the time of the incident), testified that she had seen the gun on the bed earlier that evening. She said she mentioned it to appellant and asked him two or three times to put it away, but that he responded he would do it later. Appellant denied that Sheila spoke to him about the gun that evening and Mark and Mrs. Wulf said they did not hear Sheila mention the gun.

Appellant testified that he, his brother Mark, and a friend had gone hunting the afternoon of December 13th.

He said he had fired the pistol once that afternoon and that he could not remember if he had reloaded it. He admitted that he put the gun on the bed without checking to see if it was loaded. Appellant also testified that immediately after the shooting the respondent told him, when asked what happened, that he had pointed the gun at the wall, cocked it and fired it two or three times and that it had not gone off.

The appellant introduced testimony intended to impeach the credibility of the testimony presented by the respondent.

The jury found both parties causally negligent and assigned 50 percent of the negligence to each of them. The trial court approved the verdict and entered judgment accordingly.

This appeal presents the following issues:

1. Is the evidence sufficient to sustain the jury's finding that the negligence of the appellant was a substantial factor in causing the respondent's injuries?

2. Did the trial court commit error in failing to hold, as a matter of law, that

a. the respondent's causal negligence was greater than appellant's?

b. the respondent's negligence was a superseding cause which relieved the appellant of liability?

3. Did the trial court commit error in instructing the jury on the standard of care owed by a former possessor of a firearm?

4. Should this court relieve the appellant of liability for reasons of public policy?

There is no doubt the appellant was negligent in leaving the loaded pistol in plain view on the bed. However, the appellant challenges the jury's finding of cause, contending that leaving the loaded gun in the bedroom was not a substantial factor in causing the injury.

In *Pfeifer v. Standard Gateway Theater, Inc.*, 262 Wis. 229, 55 N.W.2d 29 (1952), this court defined *cause* as:

". . . [S]uch efficient cause of the accident as to lead the jurors, as reasonable men and women, to conclude that the negligence of A . . . was a *substantial factor* in causing the injury." *Id.* at 237.

An injury may be produced by several substantial factors, acting in sequence or simultaneously, and responsibility need not be restricted to the last and most immediate factor. *Blashaski v. Classified Risk Ins. Corp.*, 48 Wis.2d 169, 174, 175, 179 N.W.2d 924 (1970). Cause is a question for the jury unless the facts are so clear that reasonable persons could not differ on the question. *Schrank v. Allstate Ins. Co.*, 50 Wis.2d 247, 256, 184 N.W.2d 127 (1971).

Appellant argues that his negligence was not causal because he could not have foreseen that respondent would handle the gun the way he did, because the gun itself was harmless without interference and because its dangerous propensities were well known to the respondent.

In *Osborne v. Montgomery*, 203 Wis. 223, 234 N.W. 372 (1931), this court distinguished foreseeability and cause. In *Osborne* it was held that foreseeability is an element of negligence, not cause. *Id.* at 242. The leaving of a loaded gun laying about in a house where it would attract attention is a negligent act by which "an ordinarily prudent person ought reasonably to foresee that he will thereby expose the interests of another to an unreasonable risk of harm." *Id.* at 242.

The issue then is whether that negligence was a substantial factor in causing respondent's injuries. Appellant's reliance on *Palmer v. Henry Disston & Sons, Inc.*, 261 Wis. 368, 52 N.W.2d 919 (1952), is misplaced.

Palmer ran from a place of safety to direct the fall of a tree that defendant's employee had cut in a negligent manner. Palmer was injured because he deliberately and unnecessarily placed himself in the path of a falling tree in an attempt to direct its fall. This court stated, "[a]s he acted for the purpose of causing the tree to fall in a manner that would make it easier 'to skid it out after it fell,' he was acting to further his own interests. . . ." *Id.* at 372. Under these facts this court concluded that the defendant was not negligent from the time the plaintiff gratuitously placed himself in danger.

In the present case the appellant's negligence both attracted the respondent to the scene and caused his injury. The appellant's negligence consisted of leaving the gun loaded and in an open place where it would attract attention. The respondent testified that he entered the room because he was shocked to see the gun laying on a child's bed. Respondent was shot because the gun was loaded—the gun in that condition was not harmless itself. The injury was the result of a natural chain of events.

A jury verdict is to be sustained if, when the evidence is viewed in a light most favorable to the verdict, there is credible evidence to support it. *Britton v. Hoyt,* 63 Wis.2d 688, 693, 218 N.W.2d 274 (1974). The jury's finding that the appellant's conduct in leaving a loaded pistol on a bed in a children's room with the door open to a frequently used hallway was a substantial factor in causing respondent's injuries is based on credible evidence. The trial court agreed:

". . . An injury that is the natural and probable consequence of a negligent or wrongful act that ought to have been foreseen in the light of attending circumstances, is caused by the negligence. The fact that a loaded firearm, left unguarded in the open and easily accessible will be handled and may be discharged so as

to cause injury is, in the view of this writer, foreseeable . . ."

A verdict which is based on credible evidence and which has the approval of the trial court will be sustained. *Upton v. Tatro,* 68 Wis.2d 562, 570, 229 N.W.2d 691 (1975).

The appellant next argues that the negligence of the respondent exceeds that of the appellant as a matter of law and therefore this court should reverse.

The apportionment of negligence is generally a question for the jury and the trial court is to sustain that apportionment if there is any credible evidence to support it. *Sabinasz v. Milwaukee & Suburban Tr. Corp.,* 71 Wis.2d 218, 222, 238 N.W.2d 99 (1976). A jury's apportionment may, however, be set aside if it is grossly disproportionate, if the plaintiff's negligence is greater than the defendant's or if there is such a complete failure of proof the apportionment must be based on speculation. *Jagmin v. Simonds Abrasive Co.,* 61 Wis.2d 60, 84, 211 N.W.2d 810 (1973). Where the causal negligence of the plaintiff is greater than that of the defendant the trial court has a duty to so hold as a matter of law. *Schuh v. Fox River Tractor Co.,* 63 Wis.2d 728, 744, 218 N.W.2d 279 (1974).

The trial court may direct a verdict when:

". . . the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion. . . .

"[W]as the evidence so strong and compelling that no reasonable jury properly instructed could conclude the negligence of the plaintiff . . . was not at least equal to that of [the defendant]? . . ." *Bishop v. Johnson,* 36 Wis.2d 64, 68, 69, 152 N.W.2d 887 (1967).

The trial court may instead order a new trial in the interests of justice where the jury's apportionment is against the great weight and clear preponderance of the evidence. *Krauth v. Quinn,* 69 Wis.2d 280, 287, 288, 230 N.W.2d 839 (1975).

In this case the trial court declined to find the plaintiff more negligent as a matter of law, and after reviewing the evidence stated:

". . . Although the court refused to grant a directed verdict on behalf of either party at the time of trial, it was satisfied that both parties were negligent and that the negligence of each was substantial so that the finding of equal negligence was not particularly surprising. On the other hand, the Court does not feel that the picking up and handling of the gun was so unusual as to allow it to determine that the negligence of the plaintiff was greater than that of the defendant. To the contrary, the Court believes that it is only natural to expect that a gun left laying in the open will be picked up and will be handled so when conduct that should have been anticipated occurs, it is for the Jury to compare the negligence."

The trial court further declined to grant a new trial in the interests of justice.

". . . This decision has already addressed the principal evidence in the case pertaining to the negligence of the parties and as already indicated the Court is satisfied there is no question regarding the negligence of each and that the verdict is not contrary to law or to the weight of the evidence . . ."

Appellant bases his argument here on the premise that where a plaintiff has failed to select the safest of several alternate courses open to him his negligence must be the greater as a matter of law. Appellant stresses the obvious danger a gun presents and asserts that respondent

proceeded unreasonably in the face of that danger, and directs our attention to several cases in which the conduct of the plaintiff precluded his recovery.

In *Rewolinski v. Harley-Davidson Motor Co.*, 32 Wis. 2d 680, 146 N.W.2d 485 (1966), this court affirmed the trial court's holding that the plaintiff's negligence was greater than the defendant's. The plaintiff there had crawled through a window in a guardhouse (and ended up falling off the desk below) because the door lock was jammed. The court said he had exposed himself to danger unnecessarily and could have called for assistance instead. However, the majority of this court concluded that the defective lock was not a substantial factor in causing the fall of the plaintiff.

In *Wear v. Northern States Power Co.*, 262 Wis. 9, 53 N.W.2d 777 (1952), this court concurred with the trial court in setting aside the verdict and holding that the plaintiff was more negligent where the plaintiff, while removing a tree, deliberately placed his ladder near a power line despite warnings from his co-workers. The court quoted the following language from *Slam v. Lake Superior T. & T. R. Co.*, 152 Wis. 426, 432, 140 N.W. 30 (1913):

" ' ". . . when the trial judge rules, . . . that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong. . . ." ' " *Wear, supra,* at 13.

In *Wilfert v. Nielsen,* 250 Wis. 646, 27 N.W.2d 893 (1947), this court granted a new trial because the jury's apportionment (plaintiff, 10 percent; defendant, 90 per-

cent) was considered grossly disproportionate where the plaintiff knowingly walked into what he should have realized was his hunting companion's line of fire.

In *Skybrock v. Concrete Construction Co.*, 42 Wis.2d 480, 167 N.W.2d 209 (1969), this court reversed the judgment and dismissed the complaint where the plaintiff deliberately disregarded the barriers the defendant had placed around its construction site and walked through the site even though an alternate sidewalk route was available.

This is not a case in which the court need only review a trial court's action in directing a verdict on motion of the defendant as in *Rewolinski* or *Wear*. The trial court here refused to direct a verdict. This is not a case like *Skybrock* where the dangerous condition the defendant created was inside a construction site surrounded by barriers. The appellant here left a loaded gun in plain view where it would attract attention. This is not a case like *Wilfert,* in which the apportionment of negligence was grossly disproportionate. The appellant here is asking this court to change the apportionment which attributes 50 percent of the causal negligence to both the respondent and appellant.

Viewing the evidence in the light most favorable to the verdict, it portrays two extremely careless young men who treated firearms with a casual disregard for their inherent danger. Both were clearly negligent. Here the trial court fully considered and reviewed the evidence when passing on motions after verdict and concurred with the apportionment of negligence as found by the jury.

This court will give great weight to a jury apportionment of negligence when the trial court has reviewed that apportionment and given reasons for sustaining it, which was done in this case. *Hillstead v. Smith,* 44 Wis. 2d 560, 566, 171 N.W.2d 315 (1969).

The next argument advanced by the appellant is that the negligence of the respondent was a superseding cause. A superseding cause is an intervening force which relieves an actor from liability for harm which his negligence was a substantial factor in producing. Restatement (Second) of *Torts,* sec. 440 (1965). An intervening force is defined as:

". . . one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Restatement (Second) of *Torts,* sec. 441(1) (1965).

The decision of this court in *U. S. Fidelity & Guaranty v. Frantl Ind.,* 72 Wis.2d 478, 490, 241 N.W.2d 421 (1976), contains the broad, general statement that the question of superseding cause "is a question of law for the trial court to decide *after* the verdict has determined that the first actor's negligence was a substantial factor in causing harm." *Id.* at 490. However, when a trial court is called upon to decide this question of law, certain principles or standards have been enunciated upon which such a determination must be based. In doing so this court has held that where a jury has determined that the defendant's conduct was a substantial cause of the harm, intervening force is not a defense unless as a matter of law there are policy factors which should relieve the first actor from liability.

"It would seem that if the appellant's conduct or omission set in motion the forces which caused the damage, or was a substantial factor in causing the damage, the defense of intervening force is unavailing. If the trier of fact determines that defendant's conduct or omission was the dominant cause which put in motion the other forces, appellant is liable. . . ." *Schneider F. & S. Co. v. Thomas H. Bentley & Son,* 26 Wis.2d 549, 554, 133 N.W.2d 254 (1965).

". . . Where intervening cause of another is interposed as a defense by a defendant charged with negligence who was the first actor, the jury is first required to find whether the found negligence of such first actor was a substantial factor in causing the accident on which liability is sought to be predicated . . . If the jury does find that the negligence of the first actor was a substantial factor in causing the accident, *then the defense of intervening cause is unavailing unless the court determines as a matter of law that there are policy factors which should relieve the first actor from liability. . . .*" (Emphasis added.) *Ryan v. Cameron,* 270 Wis. 325, 331, 71 N.W.2d 408 (1955).

Clearly if a defendant's conduct has not been found to be a substantial factor he has no need of the superseding cause defense since he is not liable. The statement in *Frantl, supra,* was supported by citations to *Merlino v. Mutual Service Casualty Ins. Co.,* 23 Wis.2d 571, 127 N.W.2d 741 (1964), and *Strahlendorf v. Walgreen Co.,* 16 Wis.2d 421, 114 N.W.2d 823 (1962). In *Merlino* this court said:

". . . Essentially in order for the intervening act of negligence to constitute a superseding cause it must be such that the conscience of the court would be shocked if the first actor were not relieved from liability. . . ." *Merlino, supra,* at 581.

The *Strahlendorf* court quoted *Ryan v. Cameron, supra.*

These holdings stand for the proposition that superseding cause is a means of relieving the first actor from liability where it would be wholly unreasonable for policy reasons to make the defendant answer in damages for his negligence, even though that negligence was considered a substantial factor by the jury.

The provisions of Restatement (Second) of *Torts,* sec. 447 (1965), have been adopted by the court to guide its application of the superseding cause defense:

"**§447. Negligence of Intervening Acts**

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

*McFee v. Harker,* 261 Wis. 213, 219, 52 N.W.2d 381 (1952).

Prior to the adoption of sec. 447 this court explained superseding cause in the following way:

"Whenever a new cause . . . intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequences would not have happened, then such injurious consequences must be deemed too remote to constitute the basis of a cause of action." *Morey v. Lake Superior Terminal & Transfer Co.,* 125 Wis. 148, 155, 103 N.W. 271 (1905); *Kramer v. Chicago, M. St. P. & P. R. Co.,* 226 Wis. 118, 128, 276 N.W. 113 (1937).

The *Kramer* court also adopted Restatement (Second) of *Torts,* sec. 443 (1965):

"**§443. Normal Intervening Force**

"The intervention of a force which is a normal consequence of a situation created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about."

and its Comment *a*:

". . . It is not necessary that an act which is done by the person harmed . . . be 'reasonable'; that is, that the act be one which a reasonable man would regard as not involving an unreasonable risk to himself or others. It is enough that the act is a normal consequence of the situation created by the actor's negligence. If it is done by the person who is harmed and is unreasonable in the sense above stated, it may amount to contributory negligence which as such prevents him from recovering . . . but the actor's negligent conduct is none the less the legal cause of the harm. . . ."

In *Ruff v. Burger,* 32 Wis.2d 141, 145 N.W.2d 73 (1966), the court quoted the following rule from Prosser, Law of Torts (hornbook series, 3d ed.), 310, 311, sec. 51:

" 'If the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant has reason to anticipate under the particular circumstances, he may be negligent . . . because he has failed to guard against it. . . .'
" 'The question is . . . whether the intervention of the later cause is a significant part of the risk involved in the defendant's conduct, or is so reasonably connected with it that the responsibility should not be terminated.' " *Ruff, supra,* at 151.

In *Schneider Fuel & Supply Co. v. Thomas H. Bentley & Son, supra,* the court adopted Restatement (Second) of *Torts,* sec. 449 (1965):

**"§449. Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent**
"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

The jury here found that appellant's negligence was a substantial factor in causing respondent's injury. The

appellant was negligent because it was foreseeable that someone might notice the loaded gun laying where it was, be attracted to it and handle it in a negligent manner, harming himself or someone else. The harm that resulted was precisely the kind of harm that was threatened. The likelihood that someone will cause harm with a loaded gun is the reason it is negligent to leave a gun loaded and accessible. Although respondent's negligence here was an intervening cause because his conduct was necessary to produce the harm after appellant negligently created a dangerous situation, respondent's conduct cannot be considered a superseding cause because it was a foreseeable consequence of the situation the appellant created.

The appellant further argues that as a matter of public policy he should be absolved of liability.

The application of public policy considerations is solely a function of this court. *Hass v. Chicago & North Western Ry. Co.*, 48 Wis.2d 321, 326, 179 N.W.2d 885 (1970). This court, has on occasion, determined not to impose liability despite a finding of causal negligence on grounds of public policy because: (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point. *Coffey v. Milwaukee*, 74 Wis.2d 526, 541, 247 N.W.2d 132 (1976).

The cases in which a causally negligent tort-feasor has been relieved of liability are infrequent and present unusual and extreme considerations.

The court invoked public policy considerations in *Rieck v. Medical Protective Co.*, 64 Wis.2d 514, 219 N.W.2d 242 (1974), to deny recovery of damages for the birth of a healthy child to a couple who sued the physician who failed to diagnose the wife's pregnancy in time for an abortion. The court also held public policy reasons prevented an injured fire fighter from recovering from the railway company, which negligently allowed its engine to cause the fire. *Hass v. Chicago & North Western Ry. Co., supra.* In *Howard v. Mt. Sinai Hospital, Inc.*, 63 Wis.2d 515, 217 N.W.2d 383, 219 N.W.2d 576 (1974), the court concluded that a claim for damages for the plaintiff's fear of developing cancer as a result of the physician's malpractice was too remote and out of proportion to the defendant's culpability, and denied recovery.

These cases do not involve issues of comparative negligence. The question presented in them is whether the defendant should be liable at all to the particular plaintiff or for the particular kind of harm. The defendants in those cases were relieved of liability because it would be unjust to expect them to assume responsibility for their acts or because it would be unjust to allow recovery for that type of injury.

Appellant is not arguing here that a defendant who left a loaded gun laying around should not be responsible for injuries that result. Rather he is arguing that he should not be liable because the respondent caused his own injuries. The appellant is, in effect, attempting to reargue cause and comparative negligence.

The injury here sustained is not remotely removed from the negligent act of leaving a loaded gun exposed on a bed in a house occupied by many people. Also, it is not highly extraordinary that someone would be injured as a result of such an act. This injury is the kind of harm that is to be expected when loaded guns and care-

less people combine. The injury here is not out of proportion to appellant's culpability, and an unreasonable burden has not been placed upon him. He did a foolish thing which he was well aware he should not have done. A friend was injured as a result. The judgment, after the damages had been reduced by respondent's 50 percent contributory negligence, amounted to $10,698.77. Appellant has not been forced to carry the responsibility alone. He is sharing it with his injured friend. Fraudulent claims will not be a problem in cases such as this. The jury is capable of ascertaining whether either or both parties have been negligent and whether the plaintiff has been injured. Similarly, a sensible and just stopping point is available. In the appropriate case the jury, or trial court, need merely find that the plaintiff who has injured himself is the more negligent.

It is not particularly shocking that a person who carelessly left a loaded gun laying about is being expected to atone to an equally careless person who accidentally managed to shoot himself with that gun.

If the evidence had clearly shown that the respondent was *playing* with the gun, of course, this case would be cast in a completely different light. One would expect the trial court and the jury to reach a different conclusion in that situation. Here, however, that possibility was only suggested. There is credible evidence that the respondent, immediately prior to the shot, was holding the gun in a safe and careful manner when he was startled by an unusual noise which caused him to lose control of the gun which ultimately discharged and injured him. The trial court examined the evidence on motions after verdict and reached the same conclusion in denying the appellant's motions.

This is not a case in which public policy considerations dictate that one should be relieved of liability.

Finally appellant contends that the trial court erred in failing to instruct the jury on the duty owed by him as a former possessor of the gun.

The instructions given by the trial court included the following:

"...

"The degree of care to be exercised by a person in the use and handling of a firearm is sufficient care as is commensurate with the dangerous nature of the firearm and the facts and circumstances existing at the time of injury. It is a degree of care proportionate to the probability of injury to himself or others.

"Consistent with the duty mentioned, a person having a weapon in his possession or under his control is bound to take precautions to prevent injury being done thereby as are commensurate with the dangerous nature of the firearm and the circumstances existing at the time. As the hazard increases, the responsibility of the person possessing or controlling the weapon increases.

"In determining the degree of care required, you should take into consideration all pertinent facts and circumstances in the case including the nature of the weapon, the circumstances surrounding its maintenance and use including the time and place of its use and the status of Mark Stewart, the injured person, as a guest in the home.

"The fact that the gun was not in the actual physical possession of Tom Wulf at the time of the incident does not mean that as a person who had been in possession and control of the weapon, he was relieved of all responsibilities and had no further duty. The duty imposed upon a person using a gun to take precautions commensurate with its dangerous nature and the existing circumstances encompasses all those persons who might suffer harm or injury from the pistol's discharge, extending to and including its use not only by that person himself but by a third person where the possessor knows or has reason to know that such third person might be likely to use the pistol in such a manner as to create an unreasonable risk of harm."

At trial the appellant objected to this instruction on the grounds that it was cumulative and placed an undue duty on him by discussing both degree of care as a user and duty as a former possessor. The issue as framed now on appeal was first raised in appellant's motion after verdict. The trial court considered this issue in the decision.

An objection to an instruction because it is incomplete must be made before the verdict is returned, but an objection because the instruction has misstated the law may be preserved in a motion after verdict. *Nimmer v. Purtell,* 69 Wis.2d 21, 38, 230 N.W.2d 258 (1975). To the extent that appellant is contending that additional language should have been added to the instruction, his contention is made too late. However, to the extent that this additional language clarifies and changes the emphasis in the instruction that was given, it is a contention that the law has been misstated. Since the question of whether appellant has waived his right to object to the instruction depends on how the instruction is viewed together with the fact the issue was raised in motions after verdict and considered by the trial court, we deem it appropriate to consider the issue.

Appellant contends that the following passage should have been added to the instruction:

" 'As a *general rule,* when an instrumentality passes from the control of a person, his responsibility for injuries inflicted by it ceases. A change in the control of an instrumentality normally operates to exonerate the person who relinquishes control from liability, insofar, at least, as a danger from the instrumentality depends upon the subsequent conduct of the person to whom the instrumentality is surrendered.' " 79 Am. Jur. *Weapons and Firearms,* Sec. 38, pg. 40. (Emphasis added.)

*Harper v. Holcomb,* 146 Wis. 183, 130 N.W. 1128 (1911), is a case involving a deer hunting accident. The

hunter shot his guide in the leg. The trial court gave the following instruction:

" 'Firearms are extraordinarily dangerous, and a person who handles such weapons is bound to use extraordinary care to prevent injury to others.' " *Id.* at 190.

This court disapproved of that language, saying:

". . . True, great care was required of appellant, but only because, ordinarily, such care is exercised, or must be presumed to be exercised, by the great mass of mankind under the same or similar circumstances . . ." *Id.* at 192.

The court thus stated that where the use of guns is concerned, the standard of ordinary care under the circumstances applies. The court further emphasized that what is ordinary care under some circumstances, would not be under other circumstances. The instruction given in the instant case clearly sets forth this standard.

It appears the appellant misconceives the import of the general rule as it relates to the surrender of a gun by a former possessor. Here the appellant did not surrender the gun to anyone. He left the loaded firearm on a bed in a house occupied by people of all ages. This is not a case in which the appellant entrusted the gun to respondent and warned him that it was loaded. The danger did not depend on respondent's conduct. The gun, being loaded, was inherently dangerous.

The instruction given explains that a former possessor's duty is limited to that situation in which the former possessor:

". . . has reason to know that such third person might be likely to use the pistol in such a manner as to create an unreasonable risk of harm."

The trial court gave an instruction which contained the only exception to the general rule which could provide

grounds on which to hold the appellant liable. If the jury had concluded that appellant had no reason to know the gun might be misused, under the instruction given the jury would have absolved the appellant. Under the facts of this case, adding the requested instruction would have served no useful purpose.

We have considered the additional arguments advanced by the appellant concerning the instructions and do not find them persuasive.

The instruction given emphasized the degree of care required in the use and handling of a firearm. This standard of care applied to both parties. The instruction made it clear that the conduct of both parties was to be evaluated. This is what the jury did. Not surprisingly it found the parties equally negligent. The instructions given were accurate and the appellant was not prejudiced by them.

*By the Court.*—Judgment affirmed.