Dorothy ENRIGHT, as Special Administrator of the Estate of Heath Enright, Heath Enright, Renee Enright, Joseph Enright, and Joseph Enright, Jr., Plaintiffs-Appellants,†

v.

BOARD OF SCHOOL DIRECTORS OF the CITY OF MILWAUKEE; Diane Clark, and Wausau Insurance Companies, Defendants-Respondents,

Peggy KENNER, President; Dr. Lee F. McCurrin, Superintendent, and Mr. John J. Peterburs, Secretary Business Manager, Defendants.

Court of Appeals

No. 82-2158. Submitted on briefs May 11, 1983.—
Decided June 13, 1983.
(Also reported in 338 N.W.2d 114.)

† Petition to review granted.

For the plaintiffs-appellants the cause was submitted on the briefs of *Angermeier & Rogers,* with *Robert C. Angermeier* of counsel, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *C. Donald Straub* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

DECKER, J.   Joseph and Dorothy Enright and their children (Enrights) appeal from an order dismissing their complaint against the Board of School Directors of the City of Milwaukee (board), Diane Clark (Clark), and the Wausau Insurance Companies (Wausau). The complaint alleged a claim in negligence as well as a civil rights denial of due process claim under 42 USC § 1983 for the death of the Enrights' son, Heath. We disagree with the trial court's determination that public policy considerations here should be applied before trial to preclude the claim in negligence, and we reverse and remand with directions to the trial court to reinstate that claim. We agree, however, with the trial court that due process was not violated within the meaning of 42 USC § 1983 and affirm the dismissal of that count.

On September 14, 1979, Virginia Burkhardt, who lives across the street from the Hampton Elementary School, noticed a man watching children play at recess. She phoned the principal's office and told Diane Clark, the secretary on duty, about the man. Clark said that she would inform the principal. Clark set the message aside and apparently forgot to tell the principal.

Heath Enright, a second-grader at the school, was strangled during the lunch hour by Thomas White, who apparently was the man observed seen lurking near the school. The Enrights brought a wrongful death action under state law and also claimed a civil rights violation under 42 USC § 1983. The trial court granted the defendants' motions to dismiss.

Regarding the common law negligence claim, the trial court considered whether to apply public policy considerations to liability in connection with the motion to dismiss or at the end of trial and decided to apply them at the earlier stage. We believe that the trial court should have adopted the preferred procedure of deference to post trial application and accordingly we reverse on this issue.

*Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 541, 247 N.W.2d 132, 140 (1976), relied upon by the trial court, sets forth six reasons why recovery may be denied in a negligence claim on public policy grounds even where the chain of causation is direct and complete:

(1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point. [Citations omitted.]

While it is true that the supreme court has decided on demurrer that public policy precludes liability, *Morgan v. Pennsylvania General Insurance Co.*, 87 Wis. 2d 723, 737–38, 275 N.W.2d 660, 667 (1979), nonetheless, *Morgan* concludes that it is generally better procedure to submit the negligence and cause-in-fact issues to the jury before addressing the public policy issue. *Id.* at 738, 275 N.W. 2d at 667. This is especially true where the factual connections are particularly attenuated. *Id.*[1] Such is the case here.

While it is alleged that Clark failed to notify the principal of the message received, the circumstances surrounding the alleged failure are by no means clear from the record before the trial court or this court. We are convinced that a full disclosure of the facts would facilitate the application of the six public policy considerations.

Because the public policy question is one of law, *Morgan, supra* at 737, 275 N.W.2d at 667, we need not accord deference to the trial court's determination of the question. Accordingly, we reverse and remand on this issue.

The trial court also dismissed the Enrights' claim under 42 USC § 1983 on the grounds that "the actions of Diane Clark do not constitute a violation of due process and further that the actions of Diane Clark were not done under color of state law." The trial court founded its position upon *Bonner v. Coughlin*, 545 F.2d 565, 567 (7th Cir 1976), *cert. denied*, 435 U.S. 932 (1978), where it was stated that "[i]f Section 1983 is to be extended to cover

---

[1] We also note that the supreme court has stated that "[t]he cases in, which a causally negligent tort-feasor has been relieved of liability are infrequent and present unusual and extreme considerations." *Stewart v. Wulf*, 85 Wis. 2d 461, 479, 271 N.W.2d 79, 88 (1978).

claims based on mere negligence, the Supreme Court should lead the way." We believe that, while the loss suffered by the Enrights was grievous and tragic, the existence of a state means of redress and the absence of a due process violation in the failure to act by Diane Clark eliminate a § 1983 claim.

The first inquiry in any § 1983 suit is whether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States. *Baker v. McCollan,* 443 U.S. 137, 140 (1979). As the Enrights point out in their brief, the due process clause of the fourteenth amendment delineates three specific guarantees: life, liberty and property. However, the fourteenth amendment protects one "only from deprivation by the 'State . . . of life . . . without due process of law.' " [Emphasis omitted.] *Martinez v. California,* 444 U.S. 277, 284, *reh. denied,* 445 U.S. 920 (1980). We believe that the rationale of the *Martinez* decision governs the case at bar and precludes a § 1983 action here.

In *Martinez,* the survivors of a murdered girl brought a § 1983 action against the state officials responsible for a parole-release decision which freed the man who, five months after his release, murdered the girl. *Id.* at 279–80. The Supreme Court stated that,

[a]lthough the decision to release Thomas from prison was action by the State, the action of Thomas five months later cannot be fairly characterized as state action. Regardless of whether, as a matter of state tort law, the parole board could be said either to have had a "duty" to avoid harm to his victim or to have proximately caused her death, we hold that, taking these particular allegations as true, appellees did not "deprive" appellants' decedent of life within the meaning of the Fourteenth Amendment. [Citations omitted.] *Id.* at 284–85.

Here, while Clark's action could arguably be described as state action,[2] the action of the murderer was not state action. As the *Martinez* Court pointed out, "[a]lthough a § 1983 claim has been described as 'a species of tort liability,' it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." [Citation omitted.] *Id.* at 285.

A further independent ground exists for rejecting the § 1983 claim. The fourteenth amendment does not protect against all deprivations of life, liberty or property; it protects only against deprivations accomplished without due process of law. *Baker, supra* at 145. Our inquiry must focus upon whether the Enrights have suffered a deprivation without due process of law. Therefore, we must determine whether this state's tort remedies provide a satisfactory means of redress. *See Parratt v. Taylor,* 451 U.S. 527, 537 (1981).

What redress or remedy the courts can provide to the parents of a murdered child for their loss can be but a paltry shadow of what was actually lost. Courts can neither restore the lost life nor order the clock to move back to a happier time. No one could challenge that the Enrights have suffered a grievous loss. Yet, the only remedy, poor as it may be, afforded under law is money damages. As such, the remedy afforded under state law is no more nor less adequate as recompense for loss than that afforded under § 1983. The Enrights have a common law negligence claim, a claim that we herein reinstate. Due process is therefore not denied them.

*Parratt, supra,* is further instructive in its approval of particular language from *Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir 1975), *modified en banc,* 545 F.2d 565

---

[2] Because of our disposition of this issue, we need not decide if Clark's failure to act was "under color of law" as required by 42 USC § 1983.

(1973).[3] In *Bonner*, a prisoner alleged that prison officials made it possible, by leaving the plaintiff's cell open, for others without authority to remove his trial transcript from his cell. The *Parratt* Court quoted *Bonner* for the following proposition:

"It seems to us that there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers. In the former situation the facts satisfy the most literal reading of the Fourteenth Amendment's prohibition against 'State' deprivations of property; in the latter situation, however, even though there is action 'under color of' state law sufficient to bring the amendment into play, the state action is not necessarily complete. For in a case such as this the law of Illinois provides, in substance, that the plaintiff is entitled to be made whole for any loss of property occasioned by the unauthorized conduct of the prison guards. We may reasonably conclude, therefore, that the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment." [517 F.2d] at 1319. 451 U.S. at 542.

While we acknowledge that Justice Blackmun's concurring opinion in *Parratt, supra* at 545–46, would not apply the opinion of the Court to deprivations of life or liberty, we note that the Court's opinion itself does not explicitly so narrow its application. We are persuaded by the logic set forth in the concluding paragraph of *Parratt, supra* at 544:

Our decision today is fully consistent with our prior cases. To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been

---

[3] It is the modification upon which the trial court here founded its decision.

inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could challenge a constitutional violation under § 1983. Such reasoning "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society.

*By the Court.*—Order affirmed in part, reversed and remanded in part.